FILED
2022 JAN 28 PM 1:40
CLERK
U.S. DISTRICT COURT

Brent Lorimer (#3731)
blorimer@wnlaw.com
Brian N. Platt (#17099)
bplatt@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for The Lovesac Company*



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE LOVESAC COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WWW.LOVESSACS.COM, an unknown business entity; WWW.LOVESAC.SHOP, an unknown business entity; WWW.LOVESACSHOP.COM, an unknown business entity; and JOHN DOES 1-10.<br><br>Defendants. | Case No:<br><br>**[FILED UNDER SEAL]**<br><br>**VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING**<br><br>**Judge:**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff The Lovesac Company ("Lovesac") complains and alleges as follows against Defendants www.lovessacs.com, www.lovesac.shop, www.lovesacshop.com, and John Does 1-10 (collectively, "Defendants").

## THE NATURE OF THE ACTION

1. This action is brought by Lovesac, the well-known manufacturer of popular frameless furniture.



**Lovesac®**

2. This action relates to counterfeiting by the Defendants, who operate websites selling counterfeit products at the following internet sites: www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com. Defendants and John Does 1-10 operate the Counterfeit Websites.

3. Defendants' websites duplicate the real Lovesac website, using the Lovesac trademark, displaying photos of genuine Lovesac products, genuine Lovesac stores, and photos used by Lovesac on its website to market genuine Lovesac products.

4. Defendants use their counterfeit websites and counterfeit products to deceive customers and frequently move their counterfeiting operations from one website to another to

2

avoid detection. Lovesac brings this action against the Defendants for counterfeiting and trademark infringement.

## THE PARTIES

5. Lovesac is a corporation organized under the laws of Delaware with a principal place of business at 2 Landmark Square, Suite 300, Stamford, Connecticut and retail stores located in the State of Utah, including at 6191 S State Street, Murray, Utah.

6. Defendants are counterfeiters. Upon information and belief, Defendants are based in China and Russia. Defendants operate counterfeit websites that purport to offer genuine Lovesac products for sale in interstate commerce, including www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com. Defendants misappropriate Lovesac's trademarks and offer counterfeit products for sale. Defendants accept payments through PayPal at (at least the following) email addresses: MariannaComptonyu@yahoo.com; kazakova-nadezhda-30479@mail.ru; and angou48jiawei22@126.com. Defendants also provide the email address kiverarob8827@gmail.com as contact information on their website.

## JURISDICTION

7. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

8. This Court has personal jurisdiction over the Defendants because they have committed acts of trademark infringement and counterfeiting in violation of 15 U.S.C. § 1125 in

3

this Judicial District, targeted Lovesac in this Judicial District, and because Defendants have placed infringing products into the stream of commerce with the knowledge or understanding that such products are targeted at the State of Utah and this Judicial District. In addition, the acts by Defendants are targeted to cause commercial injury to Lovesac in this Judicial District. In addition, upon information and belief, Defendants derive substantial revenue from their sale of infringing products within this Judicial District and in the United States, expect their actions to have consequences within this Judicial District, and derive substantial revenue from interstate and international commerce directed both to and from this Judicial District. The exercise of personal jurisdiction over each of the Defendants is proper under Utah's Long Arm Statute, Utah Code Ann § 78-27-22, and the exercise of personal jurisdiction over the Chinese Defendants is additionally proper under Federal Rule of Civil Procedure 4(k)(2).

## **VENUE**

9. Defendants are subject to personal jurisdiction in this Judicial District. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim took place in this District. The Defendants transact business within this district and Lovesac has suffered harm in this District. Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because certain Defendants are individuals whose names and addresses of residence are unknown that are otherwise subject to personal jurisdiction in this District. Venue is also proper in this judicial district under 28 U.S.C. § 1391(c)(3) because, on information and belief, the Defendants are foreign persons or entities subject to personal jurisdiction in this District. Also, in the Terms and Conditions on the Defendants' Counterfeit Websites—which were copied from the genuine www.Lovesac.com website, the Defendants actually suggest that Utah law should apply:

4

acknowledging that they have availed themselves of the privilege of doing business in Utah:

**Applicable Law**

By visiting www.lovessacs.com, you agree that the laws of the state of Utah, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and lovessacs or its affiliates.

www.lovesacshop.com/pages/shipping-returns (captured January 27, 2022)

## BACKGROUND

10. Lovesac launched in 1995 when its founder Shawn Nelson built the original eight-foot-wide foam-filled "Lovesac" in the basement of his parents' Utah home. Shawn turned his passion for frameless furniture into the company Lovesac, named after the original nylon "sac."

11. In 1998, Shawn transformed Lovesac into a "real business" and began using the LOVESAC mark in commerce. Lovesac obtained the first of many LOVESAC trademark registrations based on this first use in commerce in 1998. Since that time, Lovesac has grown exponentially and pursued a family of Lovesac trademark registrations for a variety of products, services, clothing, payment cards, and financial services, including the following trademark registrations (the "Lovesac Marks."). The Lovesac Marks are incontestable.

| Date | Reg. No | Class | Mark |
|---|---|---|---|
| 10/31/1998 | *FIRST USE IN COMMERCE* | | LOVESAC |
| 12/10/2002 | 2659121 | 20 (Furniture) | LOVESAC |
| 12/27/2005 | 3035784 | 20 (Furniture)<br>25 (Clothing)<br>35 (Retail Furniture)<br>    (Retail Stores) | LOVESAC |
| 05/22/2007 | 3244136 | 20 (Pillows) | LOVESAC |

| Date | Reg. No. | Class | Mark |
|---|---|---|---|
| | | 24 (Bedding) | |
| 09/01/2015 | 4801804 | 18 (Bags) | LOVESAC |
| 09/25/2018 | 5571076 | 16 (Printed Matter)<br>18 (Shopping Bags)<br>20 (Furniture)<br>22 (Cushioning)<br>35 (Retail Furniture) | LOVESAC |
| 11/01/2018 (App. Date) | App. Serial. No. 88177894 | 09 (Payment Cards)<br>36 (Financial Services) | LOVESAC |
| 06/14/2018 (App. Date) | 88000837 | 18 (Shopping Bags)<br>20 (Furniture)<br>22 (Cushioning)<br>24 (Lap Blankets)<br>25 (Clothing)<br>35 (Retail Stores) | LOVESAC |

12. Lovesac continued to grow throughout the United States, due in large part to the vision of its CEO Shawn Nelson. By 2017, Lovesac had grown to operate nearly 70 company-owned retail showrooms nationwide and was named, for a second time, as America's fastest growing furniture company, according to Furniture Today magazine. In 2018, Lovesac joined the Nasdaq stock exchange under the symbol LOVE. Lovesac remains a successful public company, and in the first three quarters of 2021, had $302M in sales and spent $39M on advertising.

13. Lovesac invested millions of dollars in advertising and promoting the LOVESAC marks, logos and products nationwide. The LOVESAC trademarks remain fundamental to Lovesac's business, brand, and success in the minds of consumers who associate the LOVESAC marks with its goodwill, reputation, and quality products and services.

14. In late January, 2022, Lovesac began receiving reports of counterfeit websites from its customers and employees, including websites that looked nearly identical to a genuine Lovesac

6

website. The counterfeit websites included, among others, www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com ("the Counterfeit Websites"). Captured copies of the Counterfeit Websites are attached hereto as Exhibits A-C. A captured copy of the genuine Lovesac website ("the Genuine Website") is attached hereto as Exhibit D. Each of the Counterfeit Websites has a home page which prominently features the Lovesac logo and Lovesac products. The home page of www.lovesacshop.com appears below:[1]



www.lovesacshop.com (captured January 27, 2022)
(*see* Ex. A, B, C (the "Counterfeit Websites"); *see also* Ex. D (www.Lovesac.com))

15. The Counterfeit Websites prominently feature the LOVESAC trademark in numerous locations, as well as Lovesac's authentic images. Potential customers were confused by

---

[1] As of the time of filing, this counterfeit website has apparently been disabled.

the Counterfeit Websites, and believed the websites were affiliated with Lovesac. They contacted Lovesac directly when they realized the deception. Examples of the use of the Lovesac Marks on the Counterfeit Websites appear below:



www.lovesacshop.com (captured January 27, 2022)

16. A search of the HTML code for the Counterfeit Website www.lovesacshop.com reveals that the term "Lovesac" is used 38 times. (*See* Ex. A.)

17. The Counterfeit Websites feature photographs of actual Lovesac retail establishments, including the following photo of a genuine Lovesac retail store:



www.lovesacshop.com (captured January 27, 2022)

18. The Counterfeit Websites also featured terms and conditions, where the Defendants misrepresented themselves as the "The Lovesac Company" as shown in the exemplary Privacy Policy reproduced below:



www.lovesacshop.com/pages/privacy-policy (captured January 27, 2022)

9

19. The Counterfeit Websites have offered and are offering bundled counterfeit products in the "BigOne Bundle Squattoman," "BigOne Bundle Footsac" and "BigOne Bundle Squattoman and Footsac" configurations offered on the genuine Lovesac website, at huge discounts. The Defendants advertise the discount as being 95% off the regular price:

**GIFT SETS**

www.lovesacshop.com (captured January 27, 2022)

20. Lovesac's genuine BigOne product bundles—*on sale*—are shown below:



https://www.lovesac.com/sacs/sac-bundles.html (captured January 28, 2022)

21. The Defendants' Counterfeit Websites are not authorized by Lovesac, and the presence of these counterfeit sites is a threat to Lovesac's business.

22. The Defendants' Counterfeit Websites accepted payments through PayPal at a highly discounted price. (*Compare* Exs. F, G.) PayPal is a U.S.-based payment processor subject to orders of this Court and subject to service of process in the United States.

23. The Defendants offer to ship their counterfeit products to Utah, and the checkout page on Defendants' Counterfeit Websites includes a dropdown menu listing Utah as a state to which shipment can be made, as shown in the figure below:

11



www.lovesacshop.com (captured January 27, 2022)

24. Lovesac has completed several exemplary test purchases from each of the Counterfeit Websites, for which payment was accepted by the Defendants.

25. The Defendants' scheme to deceive includes putting up new Counterfeit Websites on a regular basis, so as to avoid detection, and so as to continue their counterfeiting if a counterfeit site is located and disabled. The first Counterfeit Website to appear was www.lovessacs.com when that site was disabled an identical site appeared at www.lovesac.shop; and when that website was disabled a third counterfeit site appeared at www.lovesacshop.com.

26. The Defendants' Counterfeit Websites are not authorized by Lovesac, the presence

of Defendants' counterfeit websites is a threat to Lovesac's business, and has and will result in irreparable harm to Lovesac.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement and Counterfeiting
### 15 U.S.C. § 1114

27. Lovesac incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

28. 15 U.S.C. § 1114(1)(a) prohibits any person from using in commerce, without the consent of the registrant, any trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with the marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

29. Defendants' wrongful use of the trademark "Lovesac" is identical with or substantially indistinguishable from the federally registered Lovesac Marks, is spurious, and is applied to labels, signs, packages, and advertisements used in commerce on or in connection with the sale, offering for sale, distribution or advertising of goods or services and is likely to cause confusion, mistake or to deceive.

30. Lovesac is the owner of all rights in the Lovesac Marks, which are federally registered. (*See* Ex. E). The Lovesac Marks are distinctive and are associated in the mind of the public exclusively with Lovesac.

31. Defendants use of counterfeit marks in connection with the Counterfeit Websites on counterfeit goods is without Lovesac's consent or authorization. Defendant's use, including the importation, sale, offer for sale, and/or distribution of its counterfeit products bearing the counterfeit marks in commerce, as well as the use of such marks in connection with the

advertisement, sale, and offering for sale of goods is likely to cause confusion and mistake in the mind of the public, leading the public to believe that Defendants' products emanate or originate from Lovesac, or that Lovesac has approved, sponsored, or otherwise associated itself with Defendants or their Infringing Products.

32. Through the unauthorized use of the Lovesac Marks, Defendants are unfairly benefiting from and misappropriating Lovesac's goodwill and reputation. This has resulted in substantial and irreparable injury to the public and to Lovesac and will continue to do so unless Defendants are enjoined.

33. The Counterfeit Websites include a Terms and Conditions link, which includes a statement about the Lovesac trademarks. That statement is copied from the genuine www.Lovesac.com website and is reproduced below:

### Trademarks

LOVESAC is a federally registered trademark of The Lovesac Company. SAC, SACTIONALS, SUPERSAC, TONOLOVE, LITTLELOVE, MINISAC, and other www.lovesac.com graphics, logos, page headers, button icons, scripts, and service names are trademarks or trade dress of Lovesac. Lovesac's trademarks and trade dress may not be used in connection with any product or service that is not Lovesac's, in any manner that is likely to cause confusion among customers, or in any manner that disparages or discredits Lovesac. All other trademarks not owned by Lovesac that appear on this site are the property of their respective owners, who may or may not be affiliated with, connected to, or sponsored by Lovesac or its subsidiaries.

34. As manifest by the above statement, Defendants have actual and direct knowledge of Lovesac's prior use and ownership of the Lovesac Marks. Defendants' conduct is willful and reflects Defendants' intent to exploit the goodwill and strong brand recognition associated with the Lovesac Marks. Defendants have a bad faith intent to profit from their use of the Lovesac marks and use domain names that are identical to or confusingly similar to the Lovesac Marks. Defendants' acts constitute trademark infringement and counterfeiting in violation of the Lanham

Act.

35.     Defendants' acts constitute trademark infringement and counterfeiting in violation of the Lanham Act.

36.     Defendants' acts have caused, and will continue to cause, irreparable injury to Lovesac.  Lovesac has no adequate remedy at law. Alternatively, Lovesac is entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Lovesac respectfully prays that the Court enter judgment in its favor and award the following relief against Defendants:

A.     A judgment in favor of Lovesac that Defendants have infringed the registered Lovesac Marks and engaged in counterfeiting;

B.     A judgment in favor of Lovesac that Defendants have willfully infringed the Lovesac Marks;

C.     An order and judgment enjoining Defendants and their officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or in active concert or participation with any of them, from infringing the registered Lovesac Marks; for the destruction of any infringing articles; and for reasonable funds for corrective advertising to correct Defendant's misleading association with Lovesac;

D.     An order transferring all of the domain names for the Counterfeit Websites to Lovesac;

E.     A judgment awarding Lovesac damages in an amount to be determined at trial for

trademark counterfeiting, an accounting of Defendants' profits, and costs of the action pursuant to 15 U.S.C. § 1117;

F. In the alternative, statutory damages in the amount of $2,000,000 per counterfeit mark, for willful use of counterfeit marks, pursuant to 15 U.S.C. § 1117(c)(2);

G. Statutory damages of $100,000 per domain name, pursuant to 15 U.S.C. § 1117(d);

H. All other remedies to which Lovesac may be entitled, including all remedies provided for in 15 U.S.C. § 1117 *et seq.*;

I. A judgment trebling damages pursuant to 15 U.S.C. § 1117;

J. A judgment that this is an exceptional case, pursuant to 15 U.S.C. § 1117 with an award of Plaintiff's reasonable attorneys' fees; and

K. Any other relief the Court deems just and proper under all the circumstances.

## Demand for Trial by Jury

Lovesac demands a jury trial on all matters triable to a jury.

DATED this 28th day of January, 2022.

        Respectfully submitted,

        By: /s/ Brian N. Platt

        Brent Lorimer (#3731)
        blorimer@wnlaw.com
        Brian N. Platt (#17099)
        bplatt@wnlaw.com
        **WORKMAN NYDEGGER**
        60 East South Temple Suite 1000
        Salt Lake City, UT 84111
        Telephone: (801) 533-9800
        Facsimile: (801) 328-1707

        *Attorneys for The Lovesac Company*

# VERIFICATION

I, Shawn Nelson, declare that I am the Founder and CEO of The Lovesac Company, Plaintiff in the above-captioned matter in the United States District Court for the District of Utah. I authorized the filing of this Complaint. I have reviewed the factual allegations made in this Complaint, and to those allegations of which I have personal knowledge, I know them to be true. For those allegations of which I do not have personal knowledge, I believe them to be true based on the information and documents I have reviewed in connection with the preparation of this Complaint, and which are attached to the Complaint, including the Defendants' counterfeit websites, product listings, product photos, and the products offered for sale.

Dated: January 28, 2022

Verified by:

_____

Shawn Nelson, CEO
The Lovesac Company