FILED
2022 FEB 4 AM 10:19
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE LOVESAC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WWW.LOVESSAC.COM;<br>WWW.LOVESAC.SHOP;<br>WWW.LOVESACSHOP.COM; and JOHN DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S EX PARTE MOTIONS TO FILE UNDER SEAL, FOR EXPEDITED DISCOVERY AND SERVICE BY ALTERNATE MEANS, AND FOR A TEMPORARY RESTRAINING ORDER AND ASSET FREEZE**<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:22-cv-00056-JNP<br><br>District Judge Jill N. Parrish |

Before the court are three motions filed by Plaintiff The Lovesac Company ("Lovesac"): an Ex Parte Motion for Leave to File Under Seal (ECF No. 2); an Ex Parte Motion for a Temporary Restraining Order, Temporary Injunction, and Asset Freeze (ECF No. 3); and an Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 4). Having reviewed the memoranda, the court grants all three motions.

## BACKGROUND

Lovesac is a corporation organized under Delaware law, with its principal place of business at 2 Landmark Square, Suite 300 in Stamford, Connecticut. Lovesac operates several retail stores located in the District of Utah, including a store at 6191 S. State Street in Murray, Utah.

Lovesac specializes in manufacturing frameless furniture, including foam-filled Lovesacs. Lovesac owns a number of trademark registrations for products, services, clothing, payment cards, and financial services, with Lovesac's oldest marks dating back to 2002. Lovesac invests millions of dollars in advertising and promoting the Lovesac trademarks and products nationwide.

In late January 2022, Lovesac began receiving reports of counterfeit websites from its customers and employees. Several of the websites looked nearly identical to the genuine Lovesac website. The counterfeit websites prominently featured the Lovesac logo, photographs of Lovesac products that are identical to photographs found on the genuine Lovesac website, and photographs of genuine Lovesac retail locations. And the counterfeit websites also featured terms and conditions representing that Lovesac owned and operated the website. Indeed, potential customers were confused by the counterfeit websites and believed them to be affiliated with Lovesac.

This lawsuit names three website entities as defendants: www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com.[1] Lovesac alleges that Defendants accept PayPal payments at mariannacomptonyu@yahoo.com, kazakova-nadezhda-30479@mail.ru, and angou48jiawei22@126.com (collectively, "Defendants"). Lovesac further alleges that Defendants correspond with customers via email at kiverob8827@gmail.com. Lovesac also names ten unnamed individual defendants, Does 1-10. Lovesac maintains that, upon information and belief, Defendants are based in China and Russia. Lovesac alleges that Defendants engaged in trademark infringement and counterfeiting in violation of the Lanham Act.

---

[1] Lovesac notes in its complaint that Defendants' scheme involves regularly disabling their current website and putting up a new website to avoid detection. Therefore, www.lovessacs.com appeared first. When that site was disabled, an identical site appeared at www.lovesac.shop. And finally, when that site was disabled, a third identical site appeared at www.lovesacshop.com.

## PERSONAL JURISDICTION

At the pleadings stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Lovesac alleges that the court has personal jurisdiction over each defendant because they committed trademark infringement in Utah and marketed their counterfeit products to Utahns. Moreover, Lovesac alleges that Defendants sell counterfeit goods to Utahns. To support its argument, Lovesac contends that the checkout pages on Defendants' websites include dropdown menus listing Utah as a location to which product orders may be shipped or sold.

The inclusion of Utah in the dropdown lists of states "is sufficient to establish specific personal jurisdiction under the 'stream of commerce' theory and that the Defendants' site[s are] 'something more' than a non-targeted transaction site." *The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 9601834, at *1 (D. Utah May 5, 2020) (quoting *Zing Brothers, LLC v. Bevstar, LLC*, No. 2:11-cv-337, 2011 WL 4901321, at *2-3 (D. Utah Oct. 14, 2011)). Additionally, given the Defendants' minimum contacts, the court finds that the exercise of personal jurisdiction over the Defendants satisfies due process and does not offend the traditional notions of substantial justice and fair play. Accordingly, Lovesac makes a sufficient showing of personal jurisdiction for this stage of the proceedings.

## ANALYSIS

The court first addresses Plaintiff's motion for a temporary restraining order, then discusses Plaintiff's other requested relief.

I.      TEMPORARY RESTRAINING ORDER ("TRO")

        A.      *Legal Standard*

A TRO is appropriate where a plaintiff establishes the following: (1) a substantial likelihood of success on the merits of its claims against Defendants; (2) irreparable harm absent a TRO; (3) that the threatened injury outweighs any harm the TRO would cause Defendants; and (4) that the injunction will not adversely affect the public interest. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). Lovesac meets each of the four TRO requirements.

        B.      *Discussion*

                i.      **Likelihood of Success on the Merits**

Lovesac argues that it is likely to succeed on the merits of its trademark infringement and counterfeiting claim under the Lanham Act. *See* 15 U.S.C. § 1114. The Lanham Act subjects to liability anyone who "without the consent of the registrant—use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *Id.* § 1114(1)(a). To succeed on a trademark infringement claim, a plaintiff must prove: (1) "that the mark is protectable," (2) "that Defendants used the trademark in connection with any goods or services," and (3) "that Defendants' use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citation omitted).

Lovesac easily establishes the first two factors. Under the Lanham Act, there is a statutory presumption of protectability when the mark is registered. *See* 15 U.S.C. § 1115(a) ("Any registration issued . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark."). Lovesac provides evidence of its federal registration for "Lovesac" effective December 10, 2002. *See* ECF No. 1-5. Accordingly, Lovesac has established a sufficient likelihood of protectability at this stage. Moreover, Defendants use the trademark in marketing and selling their products on the internet, i.e., in connection with their goods. *See ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-cv-207, 2012 WL 3962737, at *3 (D. Utah Sept. 11, 2012) (holding that the plaintiffs satisfied the commercial use requirement where "Defendants have marketed and sold smart phone software applications under the [infringing] marks"). Therefore, Lovesac has demonstrated that it is likely to succeed in establishing the first and second elements of trademark infringement.

As to the third element, the Tenth Circuit employs "six nonexhaustive factors to evaluate whether there is a likelihood of confusion." *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). These factors include: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Utah Lighthouse Ministry*, 527 F.3d at 1055. "These factors are interrelated and no one factor is dispositive." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). But, at bottom, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring).

The court begins with factors (1) and (2). "[T]he degree of similarity is the most important factor." *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019). Here, the competing trademarks appear identical. Indeed, they are identical because Defendants appear to have imported the trademarks directly from Lovesac's website. And Defendants' decision to directly copy Lovesac's website strongly supports an inference that Defendants intended to infringe on Lovesac's proprietary trademark.

Factors (3) and (4) also weigh in favor of Lovesac. "Evidence of actual confusion in the marketplace is often considered the best evidence of a likelihood of confusion." *Hornady*, 746 F.3d at 1004. Here, Lovesac directly alleges confusion when it states that "[p]otential customers were confused by the Counterfeit Websites, and believed the websites were affiliated with Lovesac." ECF No. 1 ¶ 15. Similarly, the similarity of the parties' products and the manner in which they market them also favors Lovesac. By employing the exact same images, graphics, and marketing tools in selling the exact same products, Defendants substantially increased the likelihood that customers would likely confuse the two products.

Finally, Lovesac alleges that it enjoys strong trademarks. *See First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) ("The stronger the mark, the more likely it is that encroachment on it will produce confusion." (citation omitted)). The court agrees. Lovesac has engaged in extensive advertising and built its brand over the past twenty years. Lovesac appears to be commercially successful, based on its high volume of sales and public listing on the NASDAQ. And there is no evidence that "Lovesac" is frequently used by any other party. *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1093 (10th Cir. 1999) ("A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." (citation omitted)).

The only factor that does not weigh heavily in Lovesac's favor is the degree of care likely to be exercised by consumers in selecting the product. *See Sally Beauty*, 304 F.3d at 975 ("A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion."). The Tenth Circuit has declined to take a strictly "price-determinative approach." *See Hornady*, 746 F.3d at 1006 ("Nor do any of our cases take this price-determinative approach."). Instead, the court asks "whether the item is one commonly purchased on impulse." *Id.* (citation omitted). Nevertheless, "items purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully." *Sally Beauty*, 304 F.3d at 975. Typically, furniture is not an impulse purchase. Consumers often keep furniture for an extended period of time and exercise care in ensuring its quality and fit with the consumer's home. But this does not overcome the fact that each of the prior factors weighs strongly in favor of Lovesac. Accordingly, the court finds that Lovesac has demonstrated a likelihood that consumers will be confused by Defendants' use of the trademark.

*       *       *

At bottom, "[t]he controlling principle [in trademark law] is that a person may not pass off his goods or his business as the goods or business of another." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 72 (10th Cir. 1958). That is exactly what Defendants attempt to do here. Based on the allegations contained in the verified complaint, the court finds that Lovesac is likely to succeed on the merits of its trademark infringement claim.

### ii.    Immediate and Irreparable Injury

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th

7

Cir. 2001) (citation omitted). The "loss of reputation, good will, marketing potential," and customers constitutes irreparable injury. *See id.* at 1156-57; *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004) ("[T]he irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."); *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F. Supp. 2d 1248, 1254 (D. Utah 2013) ("Loss of customers, loss of goodwill, and threats to a business' viability have been found to constitute irreparable harm.").

Lovesac alleges that Defendants use Lovesac's trademarks and display photos of genuine Lovesac products and stores, as well as photographs from Lovesac's genuine website, on Defendants' websites. Lovesac further contends that Defendants use their websites to market and sell counterfeit products. Lovesac claims that Defendants' counterfeit websites and infringement on Lovesac's trademark are already causing immediate and irreparable injury to the company. The court is persuaded by these allegations.

First, Lovesac provides evidence that Defendants' websites and use of Lovesac's trademarks have already deceived customers. Indeed, Lovesac learned of Defendants' websites from potential customers who were confused by the counterfeit websites and believed that the websites were affiliated with Lovesac. ECF No. 1 ¶ 15. Second, Lovesac alleges that Defendants' continued advertising and sale of its allegedly counterfeit products will continue to cause irreparable harm to Lovesac as Defendants continue to confuse and deceive consumers as to the origin and quality of the product, thus causing consumers to associate Defendants' counterfeit products with Lovesac.

Therefore, the court finds that Lovesac is suffering and will suffer irreparable harm in the form of a diminished goodwill, damage to Lovesac's reputation, and a decrease in market share and future sales.

### iii.    Balance of Harms

Moreover, the balance of harms tips in favor of Lovesac. "[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007). Here, because Defendants' websites allegedly sell counterfeit products using Lovesac's federally protected trademarks, the court finds that Defendants cannot avoid a TRO based on harm to its business. Thus, there is no cognizable likelihood of harm to Defendants. *See Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) ("Producing and selling counterfeit goods is illegal. There can be no cognizable harm to the Defendants by the issuance of an order requiring them not to break the law.").

### iv.    Public Interest

Finally, Lovesac "must also demonstrate that issuance of the preliminary injunction is not adverse to the public interest." *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 357 (10th Cir. 1986). The public has "the right . . . not to be deceived or confused." *Optician Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (citations omitted). Here, Lovesac has offered evidence that Defendants' websites and use of Lovesac's trademarks are likely to cause confusion in violation of the Lanham Act. Thus, the court finds that Lovesac has established that a TRO is in the public interest.

v.       **Ex Parte Nature of Plaintiff's Request**

Lovesac moves for its TRO without providing notice to Defendants. Under Federal Rule of Civil Procedure 65(b)(1), a movant may obtain an ex parte TRO only if

(A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

While this court generally expresses skepticism of ex parte TROs, it recognizes that, occasionally, circumstances require an ex parte TRO. This case presents one such occasion.

As the Supreme Court counsels, "[e]x parte temporary restraining orders are no doubt necessary in certain circumstances [but] they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70.*, 415 U.S. 423, 439 (1974) (citation omitted). Cases where notice would render further prosecution "fruitless"—such as when an alleged infringer would likely dispose of the infringing goods before the hearing—warrant ex parte relief. *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

Lovesac demonstrates, as set forth in this order, that it is presently suffering from immediate and irreparable harm because of Defendants' counterfeit scheme and unlawful trademark infringement. Lovesac urges the court to proceed without notice to avoid giving Defendants an opportunity to dispose of the counterfeit products and related assets. *See Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("As recognized in *In re Vuitton et Fils S.A.*, 606 F. 2d 1, 4-5 (2d Cir. 1979), and its progeny, proceedings against those who

deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted."). And other courts have recognized the need for ex parte relief in cases involving foreign counterfeiters operating over the internet. *See, e.g.*, *Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV 14-6680, 2014 WL 12561613, at *4 (C.D. Cal. Aug. 27, 2014) (issuing an ex parte TRO where plaintiff alleged the foreign defendant could easily hide, destroy, conceal, or transfer the counterfeit goods and records); *Yanmar Co., Ltd. v. Baoluli Happy*, No. 1:19-cv-5331, 2019 WL 8277259, at *3 (N.D. Ga. Nov. 25, 2019) ("Foreign parties that sell Counterfeit Products often 'disappear' when notified that their conduct is unlawful, only to set up a new online storefront under a new name, with new financial accounts.").

The court concurs that granting relief ex parte is appropriate where foreign counterfeiters operate over the internet, as is the case with Defendants, and finds that Lovesac meets the ex parte requirements in Rule 64(b). The court GRANTS Lovesac's ex parte motion for a TRO.

Finally, the court may "in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm'" to the defendant. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (citation omitted). As such, the court declines to impose a bond due to the absence of proof of a likelihood of harm to Defendants.

## II.    PLAINTIFF'S OTHER REQUESTS FOR RELIEF

In addition to the temporary restraining order, Lovesac also moves the court for the following relief: (1) an order temporarily sealing the proceedings, (2) an order freezing Defendants' PayPal accounts and related assets, (3) an order permitting expedited discovery of

Defendants' financial information, and (4) an order permitting Plaintiff to serve Defendants by email. For the following reasons, the court grants each of the requests for relief.

### A.      Motion to Seal

Lovesac seeks to temporarily seal these proceedings under the District of Utah's Civil Rule 5-2. *See* DUCivR 5-2(a) ("In extraordinary circumstances, a judge may order a case to be sealed . . . ."). Traditionally, court records are a matter of public record. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) ("Courts have long recognized a common-law right of access to judicial records."). The District of Utah's Civil Rule 5-2(a) further reinforces that "[t]he records of the court are presumptively open to the public" and counsels that sealing documents filed with the court "is highly discouraged." Nevertheless, "the presumption in favor of access to judicial records may be overcome where countervailing interests heavily outweigh the public interests in access." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (citation omitted).

"The party seeking to overcome the presumption of public access to the document bears the burden of showing some significant interest that outweighs the presumption." *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (citation omitted). That burden requires "articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co.*, 698 F.3d at 1242 (citation omitted). In resolving whether to seal the proceedings, the court must "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Helm*, 656 F.3d at 1292).

A party can rarely meet the heavy burden of demonstrating that its interests outweigh the public interest in a transparent judiciary. But this case presents precisely the sort of factual scenario that merits temporary sealing. In cases where a plaintiff alleges a counterfeiter could dissipate its

12

assets and disappear if it learns of the proceedings, plaintiffs can show a "real and substantial interest" in ensuring assets remain for a potential recovery. *Colony Ins. Co.*, 698 F.3d at 1242; *see also Deckers Outdoor Corp. v. P'ships & Unincorp. Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *1 (N.D. Ill. Oct. 31, 2013) (permitting plaintiff to file under seal "because its primary objective is to secure a pre-judgment restraint on any of Defendants' assets that might be within the Court's authority to freeze"); *Sony Comput. Ent. Am., Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 978 (N.D. Cal. 1999) (noting that the court "granted [plaintiff's] request for a TRO and Order for Seizure and Impoundment of Counterfeit Goods and directed that all motions and papers be filed under seal"); *Lorillard Tobacco Co. v. Barah Deli & Grocery*, No. C-05-3125-JF, 2005 WL 2397516, at *1 (N.D. Cal. Sept. 28, 2005) (noting that the court "ordered that the case be sealed" where plaintiffs alleged defendants "are selling counterfeit Newport cigarettes bearing [plaintiff's] marks"); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283(AJN), 2012 WL 5265727, at *1 (S.D.N.Y. Oct. 24, 2012) (noting that the court "granted Plaintiff's request to file the Complaint under seal so that Plaintiff could obtain certain *ex parte* remedies . . . without providing the defendants, alleged to be counterfeiters, with an opportunity to destroy any infringing goods or abscond with any ill-gotten profits").

Here, Plaintiff alleges that Defendants operate websites that sell counterfeit products. Lovesac contends that if Defendants learn of this proceeding, they may immediately dissipate their assets through electronic transfers to foreign jurisdictions. Such transfers would hamper the court's power to grant relief and frustrate the purpose of the Lanham Act under which Lovesac sued Defendants. Thus, Lovesac requests that the court temporarily seal these proceedings until the TRO and asset freeze are in place.

Although there is a presumption in favor of allowing access to judicial records, Lovesac sufficiently demonstrates that its interests in preserving its ability to obtain preliminary, and ultimately permanent, relief are real and substantial. Given the extraordinary circumstances of this case and the temporary nature of the requested seal, the court GRANTS Lovesac's Ex Parte Motion for Leave to File Under Seal (ECF No. 2).

### B.    Motion for Asset Freeze

Lovesac also seeks to temporarily freeze any assets in the PayPal accounts associated with Defendants, as well as any bank accounts in receipt of proceeds from the PayPal accounts, to preserve its right to an accounting. "[A] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (citation omitted). "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

Lovesac produced evidence that Defendants use PayPal accounts to process payments for consumer purchases of the products at issue. Lovesac alleges that PayPal processes credit card or electronic transfer payments from consumers, which are directed to Defendants' PayPal accounts. PayPal, Plaintiff alleges, then forwards the payments to Defendants. Without an asset freeze, Lovesac argues, Defendants will continue to engage in and profit from their allegedly counterfeit

14

scheme. *See Klein*, 2008 WL 11340043, at *4 ("[T]he court is justified in freezing Defendants' assets not only to protect them for possible future attachment, but also to deprive Defendants of capital to continue their counterfeiting operations."). And Lovesac maintains that Defendants, if given notice of this TRO, will move their financial assets outside of this court's jurisdiction where they can hide or dispose of them, thereby rendering an accounting meaningless. Because Lovesac seeks Defendants' profits from their allegedly unlawful acts, Lovesac urges the court to freeze the assets of the PayPal accounts associated with mariannacomptonyu@yahoo.com, kazakova-nadezhda-30479@mail.ru, and angou48jiawei22@126.com, as well as any bank accounts that have received proceeds from those accounts.

The court finds that Lovesac's allegation that Defendants will move their assets beyond this court's jurisdiction justifies the requested asset freeze. The court further finds that Federal Rule of Civil Procedure 65(d)(2)(C) grants the court authority to bind any participants in processing the allegedly counterfeit sales, including PayPal. *See* FED. R. CIV. P. 65(d)(2)(C) (noting that injunctions may bind "other persons who are in active concert or participation with [the party subject to the injunction]"). Thus, to preserve Lovesac's right to an accounting and ensure the availability of permanent relief, the court GRANTS Lovesac's motion for an asset freeze.

### C.   Motion for Expedited Discovery

Lovesac moves ex parte for expedited discovery of Defendants' financial information. Generally, a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." FED. R. CIV. P. 26(d)(1). But "the traditional sequence of discovery may . . . be altered by the court in the exercise of its broad discretion." *1524948 Alberta LTD. v. Doe*, No. 2:10-cv-900, 2010 WL 3743907, at *1 (D. Utah Sept. 23, 2010). The party seeking expedited discovery "has the burden of showing good cause for the requested departure from usual

discovery procedures." *Id.* (citation omitted). A party moving for expedited discovery may show good cause where "the party seeks a preliminary injunction, or where the moving party has asserted claims of infringement and unfair competition." *Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 1:10-cv-209, 2011 WL 13136539, at *1 (D. Utah Mar. 1, 2011) (citation omitted).

Lovesac has established good cause to uncover financial information from Defendants. Lovesac alleges that Defendants use PayPal to process payments for consumer purchases of the products at issue. Lovesac avers that it does not know the identity or location of the banks or other financial institutions to which PayPal transfers funds resulting from Defendants' sales and, without expedited discovery, it will not know the persons or entities upon which to serve the temporary restraining order and asset freeze. Lovesac argues that Defendants may then dissipate any available funds before the court grants relief. Because the court grants Lovesac's requested asset freeze and finds good cause for Lovesac's request for expedited discovery to effectuate that asset freeze, the court GRANTS Lovesac's Ex Parte Motion for Expedited Discovery.

### D.  Motion for Service by Alternate Means

Lovesac also moves ex parte for an order authorizing service of process by email. Lovesac alleges that Defendants are based in China and Russia. Federal Rule of Civil Procedure 4(h) states that absent a waiver or federal law to the contrary, a "foreign corporation, or a partnership or other unincorporated association" must be served if "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f)." Rule 4(f), in turn, permits service:

(1)    by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2)    if there is no internationally agreed means, or if international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or

      (3)    by other means not prohibited by international agreement, as the court orders.

Rule 4(f) does not create a hierarchy of preferred methods of service, and parties are not required to comply with Rule 4(f)(1) or (2) before seeking service under Rule 4(f)(3). *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Thus, the relevant inquiry for service under Rule 4(f)(3) is whether the requested method of service is prohibited by international agreement, including the Hague Convention. *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020), *cert. denied,* No. 20-1033, 2021 WL 2519105 (U.S. June 21, 2021).

Service by email is not prohibited by international agreements with Russia or China. *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.* No. 5:20-cv-4773, 2020 WL 5199434, at *14 (N.D. Cal. Aug. 17, 2020) ("[S]ervice by email on defendants in China is not barred by any international agreement."); *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 2:13-cv-458, 2013 WL 1644808, at *1 (W.D. Pa. Apr. 16, 2013) ("The Court is also not aware of any international agreement or Russian law that prohibits service by email . . . ."). In particular, the "Hague Convention does not expressly prohibit service by email." *Love-Less Ash Co., Inc. v. Asia Pac. Constr., LLC*, No. 2:18-cv-595, 2021 WL 3679971, at *2 (D. Utah Aug. 19, 2021); *The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 6364598, at *4-5 (D. Utah Oct. 29, 2020) (concluding that "email service is not prohibited by international agreement," even though China objected to service by postal channels under Article 10 of the Hague Convention); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-cv-9913, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) (concluding the same for Russia). And courts in this district and other jurisdictions have found that service by email complies with Rule 4(f)(3). *See, e.g.*, *Neck Hammock*, 2020 WL

6364598, at *5; *Microsoft Corp. v. Does 1-18*, No. 13-cv-139, 2014 WL 1338677, at *3 (E.D. Va. Apr. 2, 2014).

In addition to complying with Rule 4(f), the alternate means of service authorized by the court must satisfy constitutional norms of due process. Due process requires service of process that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts have previously found that service of process by email meets constitutional due process requirements. *Rio Props.*, 284 F.3d at 1017 (concluding "[w]ithout hesitation" that service of process by email met constitutional due process requirements); *Neck Hammock, Inc.*, 2020 WL 6364598, at *5 (concluding that "email service can comport with constitutional notions of due process").

In this case, email service clearly comports with constitutional notions of due process. Most importantly, it is likely the best way to effectively notify Defendants of this case. Defendants appear to primarily communicate with customers, domain registrars, and web hosts through electronic communication. And Lovesac alleges Defendants provide the email address kiverob8827@gmail.com as contact information on their websites. Thus, service by email is reasonably calculated to promptly notify Defendants of the pending action. *See ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-cv-5149, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (holding that service by email to "the contact email address that is listed on [the defendant's] website" was "not only reasonably calculated to provide actual notice . . . but the method most likely to apprise [defendants] of this action"); *Cisco Sys., Inc.*, 2020 WL 5199434, at *15 (finding service on Chinese defendants by email proper when the defendants "operate Internet-based businesses trafficking in counterfeit . . . products, . . . provide email addresses for communication,

and . . . ultimately negotiated and consummated transactions for sale of the infringing products . . . via email"); *Facebook, Inc. v. Kokhtenko*, No. 21-cv-3036, 2021 WL 3373211, at *2 (N.D. Cal. Aug. 3, 2021) (finding service by email proper where the "emails are being used in connection with [Russian] defendant's online business"). Moreover, because Defendants are e-commerce and foreign-based companies, service of process by email is likely "the only means of effecting service of process." *Rio Props.*, 284 F.3d at 1018.

Finally, although service of process by email is appropriate and comports with due process in this case, an additional safeguard should be put in place to ensure due process. Specifically, the court ORDERS Lovesac to provide the court with any indication that emails sent to Defendants are returned or otherwise not received.

## CONCLUSION AND ORDER

Based on the foregoing, the court ORDERS the following:

(1)     The court GRANTS Plaintiff's Ex Parte Motion for Leave to File Under Seal (ECF No. 2). The clerk shall maintain these proceedings under seal pending further order of the court. Plaintiff shall promptly move the court to unseal these proceedings once any orders related to its motions for a temporary restraining order and asset freeze are served on the relevant parties and the temporary restraining order and asset freeze are in place.

(2)     The court GRANTS Plaintiff's Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 4). Plaintiff is permitted to seek discovery from PayPal regarding financial accounts relevant to the instant dispute on an expedited basis. Once the asset freeze and financial discovery ordered herein are completed, Plaintiff may provide service of process to the unknown Defendants

pursuant to Federal Rule of Civil Procedure 4(f)(3) at the following email addresses previously identified in this Order:

- marianncomptonyu@yahoo.com
- kazakova-nadezhda-30479@mail.ru
- angou48jiawei22@126.com
- kiverob8827@gmail.com

Plaintiff must provide the court with any indication that it receives from its email provider if the emails sent to Defendants are returned or otherwise not received.

(3)   The court GRANTS Plaintiff's Ex Parte Motion for a Temporary Restraining Order and Asset Freeze (ECF No. 3). Refer to the docket for a copy of the Temporary Restraining Order.

DATED February 4, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge

20

United States District Court
for the
District of Utah
February 4, 2022

******MAILING CERTIFICATE OF THE CLERK******

RE:   The Lovesac Company v WWW.LOVESAC.COM et al (Sealed)
      2:22cv00056

**Brent P. Lorimer**
**Brian N. Platt**
WORKMAN NYDEGGER
VIA EMAIL

*Amy Faust*

_____

Amy Faust