FILED
2022 FEB 18 AM 11:46
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE LOVESAC COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>WWW.LOVESSAC.COM;<br>WWW.LOVESAC.SHOP;<br>WWW.LOVESACSHOP.COM; and JOHN DOES 1-10,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND EXTENSION OF ASSET FREEZE**<br><br><br>Case No. 2:22-cv-00056-JNP<br><br>District Judge Jill N. Parrish |

On February 18, 2022, the court held a hearing to determine whether to enter a preliminary injunction in this matter. The court provided notice of the hearing to all parties. At the hearing, Plaintiff The Lovesac Company ("Lovesac" or "Plaintiff") moved to convert the existing temporary restraining order into a preliminary injunction under Federal Rule of Civil Procedure 65(a). Having considered the arguments raised at the hearing, the court GRANTS the motion for the following reasons.

## BACKGROUND

Lovesac is a corporation organized under Delaware law, with its principal place of business at 2 Landmark Square, Suite 300 in Stamford, Connecticut. Lovesac operates several retail stores located in the District of Utah, including a store at 6191 S. State Street in Murray, Utah.

Lovesac specializes in manufacturing frameless furniture, including foam-filled Lovesacs. Lovesac owns a number of trademark registrations for products, services, clothing, payment cards, and financial services, with Lovesac's oldest marks dating back to 2002. Lovesac invests millions of dollars in advertising and promoting the Lovesac trademarks and products nationwide.

In late January 2022, Lovesac began receiving reports of counterfeit websites from its customers and employees. Several of the websites looked nearly identical to the genuine Lovesac website. The counterfeit websites prominently featured the Lovesac logo, photographs of Lovesac products that are identical to photographs found on the genuine Lovesac website, and photographs of genuine Lovesac retail locations. And the counterfeit websites also featured terms and conditions representing that Lovesac owned and operated the website. Indeed, potential customers were confused by the counterfeit websites and believed them to be affiliated with Lovesac.

This lawsuit names three website entities as defendants: www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com.[1] Lovesac alleges that Defendants accept PayPal payments at mariannacomptonyu@yahoo.com, kazakova-nadezhda-30479@mail.ru, and angou48jiawei22@126.com (collectively, "Defendants"). Lovesac further alleges that Defendants correspond with customers via email at kiverob8827@gmail.com. Lovesac also names ten unnamed individual defendants, Does 1-10. Lovesac maintains that, upon information

---

[1] Lovesac notes in its complaint that Defendants' scheme involves regularly disabling their current website and putting up a new website to avoid detection. Therefore, www.lovessacs.com appeared first. When that site was disabled, an identical site appeared at www.lovesac.shop. And finally, when that site was disabled, a third identical site appeared at www.lovesacshop.com. At the hearing on the TRO, counsel for Plaintiff represented that all three websites have now been shut down.

and belief, Defendants are based in China and Russia. Lovesac alleges that Defendants engaged in trademark infringement and counterfeiting in violation of the Lanham Act.

On February 4, 2022, the court entered a Temporary Restraining Order in this matter, which went into effect the same day at 10:30 a.m. MST and was set to expire fourteen days later, on February 18, 2022. ECF No. 8. On February 18, 2022, the court held a hearing to determine whether it should enter a preliminary injunction upon expiration of the extended TRO. All parties received notice of the hearing. Only counsel for Lovesac appeared. In sum, Defendants have not appeared at the noticed hearing or otherwise contacted the court in this matter.

## PERSONAL JURISDICTION

Before a district court may issue a preliminary injunction, it must determine whether "there is a reasonabl[e] probability that it has personal jurisdiction over" the defendant. *Sebo Am., LLC v. Azar*, No. 20-cv-03015, 2021 U.S. Dist. LEXIS 34245, at *6 (D. Colo. Feb. 24, 2021) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001)). The court finds that there is a reasonable probability that it has personal jurisdiction over Defendants.

At the pleadings stage, a plaintiff need only establish a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Lovesac alleges that the court has personal jurisdiction over each defendant because they committed trademark infringement in Utah and marketed their counterfeit products to Utahns. To support its argument, Lovesac contends that the checkout pages on Defendants' websites include dropdown menus listing Utah as a location to which product orders may be shipped or sold. The inclusion of Utah in the dropdown lists of states "is sufficient to establish specific personal jurisdiction under the 'stream of commerce' theory and that the Defendants' site[s are]

3

'something more' than a non-targeted transaction site." *The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 9601834, at *1 (D. Utah May 5, 2020) (quoting *Zing Brothers, LLC v. Bevstar, LLC*, No. 2:11-cv-337, 2011 WL 4901321, at *2-3 (D. Utah Oct. 14, 2011)). Moreover, Lovesac alleges that Defendants sell counterfeit goods to Utahns. Indeed, at the hearing on the TRO, counsel for Plaintiff represented that the records received from Paypal indicate numerous sales into Utah.

Finally, given the Defendants' minimum contacts, the court finds that the exercise of personal jurisdiction over the Defendants satisfies due process and does not offend the traditional notions of substantial justice and fair play. Accordingly, Lovesac makes a sufficient showing of personal jurisdiction for this stage of the proceedings.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 65(a) "authorizes district courts to issue preliminary injunctions." *Coalition of Concerned Citizens v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 706 (10th Cir. 2017) (unpublished) (quoting *Winter*, 555 U.S. at 22). "A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor: specifically, prove that '(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (unpublished) (citation omitted).

4

"In addition, the following types of preliminary injunctions are disfavored and they require that the movant satisfy an even heavier burden" of demonstrating that the four factors above weigh in the movant's favor: "(1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits." *SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro*, 389 F.3d at 975. Lovesac is subject to this "heavier burden" because a preliminary injunction would disturb the status quo and afford Lovesac substantially all of the relief that it may recover after a full trial on the merits. But even with this "heavier burden," the court finds that Lovesac has met the requirements for a preliminary injunction.

## ANALYSIS

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

"'[T]he very purpose of an injunction under Rule 65(a) is to give temporary relief based on a preliminary estimate of the strength of the plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case.' Therefore, 'a plaintiff must present a prima facie case but need not show a certainty of winning.'" *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1226 (D. Utah 2019) (citations omitted); *see also Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (citations omitted). To succeed on a trademark infringement claim, a plaintiff must prove: (1) "that the mark is protectable," (2)

"that Defendants used the trademark in connection with any goods or services," and (3) "that Defendants' use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citation omitted).

Lovesac easily establishes the first two factors. Under the Lanham Act, there is a statutory presumption of protectability when the mark is registered. *See* 15 U.S.C. § 1115(a) ("Any registration issued . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark."). Lovesac provides evidence of its federal registration for "Lovesac" effective December 10, 2002. *See* ECF No. 1-5. Accordingly, Lovesac has established a sufficient likelihood of protectability at this stage. Moreover, Defendants use the trademark in marketing and selling their products on the internet, i.e., in connection with their goods. *See ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-cv-207, 2012 WL 3962737, at *3 (D. Utah Sept. 11, 2012) (holding that the plaintiffs satisfied the commercial use requirement where "Defendants have marketed and sold smart phone software applications under the [infringing] marks"). Therefore, Lovesac has demonstrated that it is likely to succeed in establishing the first and second elements of trademark infringement.

As to the third element, the Tenth Circuit employs "six nonexhaustive factors to evaluate whether there is a likelihood of confusion." *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). These factors include: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised

by purchasers; and (6) the strength or weakness of the marks." *Utah Lighthouse Ministry*, 527 F.3d at 1055. "These factors are interrelated and no one factor is dispositive." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). But, at bottom, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring).

The court begins with factors (1) and (2). "[T]he degree of similarity is the most important factor." *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019). Here, the competing trademarks appear identical. Indeed, they are identical because Defendants appear to have imported the trademarks directly from Lovesac's website. And Defendants' decision to directly copy Lovesac's website strongly supports an inference that Defendants intended to infringe on Lovesac's proprietary trademark.

Factors (3) and (4) also weigh in favor of Lovesac. "Evidence of actual confusion in the marketplace is often considered the best evidence of a likelihood of confusion." *Hornady*, 746 F.3d at 1004. Here, Lovesac directly alleges confusion when it states that "[p]otential customers were confused by the Counterfeit Websites, and believed the websites were affiliated with Lovesac." ECF No. 1 ¶ 15. Similarly, the similarity of the parties' products and the manner in which they market them also favors Lovesac. By employing the exact same images, graphics, and marketing tools in selling the exact same products, Defendants substantially increased the likelihood that customers would confuse the two products.

Finally, Lovesac alleges that it enjoys strong trademarks. *See First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) ("The stronger the mark, the more likely it is that encroachment on it will produce confusion." (citation omitted)). The court agrees. Lovesac has engaged in extensive advertising and built its brand over the past twenty years.

Lovesac appears to be commercially successful, based on its high volume of sales and public listing on the NASDAQ. And there is no evidence that "Lovesac" is frequently used by any other party. *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1093 (10th Cir. 1999) ("A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." (citation omitted)).

The only factor that does not weigh heavily in Lovesac's favor is the degree of care likely to be exercised by consumers in selecting the product. *See Sally Beauty*, 304 F.3d at 975 ("A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion."). The Tenth Circuit has declined to take a strictly "price-determinative approach." *See Hornady*, 746 F.3d at 1006 ("Nor do any of our cases take this price-determinative approach."). Instead, the court asks "whether the item is one commonly purchased on impulse." *Id.* (citation omitted). Nevertheless, "items purchased on impulse are more likely to be confused than expensive items, which are typically chosen carefully." *Sally Beauty*, 304 F.3d at 975. Typically, furniture is not an impulse purchase. Consumers often keep furniture for an extended period of time and exercise care in ensuring its quality and fit with the consumer's home. But this does not overcome the fact that each of the prior factors weighs strongly in favor of Lovesac. Accordingly, the court finds that Lovesac has demonstrated a likelihood that consumers will be confused by Defendants' use of the trademark.

II. **IMMEDIATE AND IRREPARABLE INJURY**

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance. The movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Kodiak Cakes*, 358 F. Supp. 3d at 1236 (citations omitted). A plaintiff suffers

irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted). The "loss of reputation, good will, marketing potential," and customers constitutes irreparable injury. *See id.* at 1156-57; *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004) ("[T]he irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."); *Limitless Worldwide, LLC v. AdvoCare Int'l, LP*, 926 F. Supp. 2d 1248, 1254 (D. Utah 2013) ("Loss of customers, loss of goodwill, and threats to a business' viability have been found to constitute irreparable harm.").

Lovesac alleges that Defendants use Lovesac's trademarks and display photos of genuine Lovesac products and stores, as well as photographs from Lovesac's genuine website, on Defendants' websites. Lovesac further contends that Defendants use their websites to market and sell counterfeit products. Lovesac claims that Defendants' counterfeit websites and infringement on Lovesac's trademark are already causing immediate and irreparable injury to the company. The court is persuaded by these allegations.

First, Lovesac provides evidence that Defendants' websites and use of Lovesac's trademarks have already deceived customers. Indeed, Lovesac learned of Defendants' websites from potential customers who were confused by the counterfeit websites and believed that the websites were affiliated with Lovesac. ECF No. 1 ¶ 15. Second, Lovesac alleges that Defendants' continued advertising and sale of its allegedly counterfeit products will continue to cause irreparable harm to Lovesac as Defendants continue to confuse and deceive consumers as to the

origin and quality of the product, thus causing consumers to associate Defendants' counterfeit products with Lovesac.

Therefore, the court finds that Lovesac is suffering and will suffer irreparable harm in the form of a diminished goodwill, damage to Lovesac's reputation, and a decrease in market share and future sales.

### III. BALANCE OF HARMS

Moreover, the balance of harms tips in favor of Lovesac. "[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007). Here, because Defendants' websites allegedly sell counterfeit products using Lovesac's federally protected trademarks, the court finds that Defendants cannot avoid a preliminary injunction based on harm to its business. Thus, there is no cognizable likelihood of harm to Defendants. *See Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) ("Producing and selling counterfeit goods is illegal. There can be no cognizable harm to the Defendants by the issuance of an order requiring them not to break the law.").

### IV. PUBLIC INTEREST

Lovesac "must also demonstrate that issuance of the preliminary injunction is not adverse to the public interest." *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 357 (10th Cir. 1986). The public has "the right . . . not to be deceived or confused." *Optician Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (citations omitted). Here, Lovesac has offered evidence that Defendants' websites and use of

10

Lovesac's trademarks are likely to cause confusion in violation of the Lanham Act. Thus, the court finds that Lovesac has established that a preliminary injunction is in the public interest.

## V. ASSET FREEZE

As part of its motion for a preliminary injunction, Lovesac seeks a continued freeze of Defendants' assets to preserve its right to an accounting. "[A] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (citation omitted). "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-00521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

Lovesac produced evidence that Defendants use PayPal accounts to process payments for consumer purchases of the products at issue. Lovesac alleges that PayPal processes credit card or electronic transfer payments from consumers, which are directed to Defendants' PayPal accounts. PayPal, Plaintiff alleges, then forwards the payments to Defendants. Without an asset freeze, Lovesac argues, Defendants will continue to engage in and profit from their allegedly counterfeit scheme. *See Klein*, 2008 WL 11340043, at *4 ("[T]he court is justified in freezing Defendants' assets not only to protect them for possible future attachment, but also to deprive Defendants of capital to continue their counterfeiting operations.").

The court finds that Lovesac's allegation that Defendants will move their assets beyond this court's jurisdiction justifies the requested asset freeze. The court further finds that Federal Rule of Civil Procedure 65(d)(2)(C) grants the court authority to bind any participants in processing the allegedly counterfeit sales, including PayPal. *See* FED. R. CIV. P. 65(d)(2)(C) (noting that injunctions may bind "other persons who are in active concert or participation with [the party subject to the injunction]"). Thus, to preserve Lovesac's right to an accounting and ensure the availability of permanent relief, the court extends the freeze on Defendants' assets.

*   *   *

In conclusion, the court GRANTS Lovesac's motion to convert the temporary restraining order to a preliminary injunction. The court shall file the accompanying preliminary injunction on the docket.

DATED February 18, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge