Brent Lorimer (#3731)
blorimer@wnlaw.com
Brian N. Platt (#17099)
bplatt@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for The Lovesac Company*

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE LOVESAC COMPANY, a Delaware corporation, | Case No: 2:22-cv-00056 |
| Plaintiff, | |
| vs. | **MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |
| WWW.LOVESSACS.COM, an unknown business entity; WWW.LOVESAC.SHOP, an unknown business entity; WWW.LOVESACSHOP.COM, an unknown business entity; and JOHN DOES 1-10. | District Judge Jill N. Parrish |
| Defendants. | |

# TABLE OF CONTENTS

MEMORANDUM .................................................................................................................1

I.    BACKGROUND ........................................................................................................1

II.   ARGUMENT .............................................................................................................3

      A.    The Court has Subject Matter Jurisdiction Over this Action ...................................4

      B.    The Court has Personal Jurisdiction over the Defendants. .......................................4

      C.    Default Judgment Should be Granted. ......................................................................5

            1.    Defendants' Use of the LOVESAC Trademarks is Trademark
                  Infringement in Violation of 15 U.S.C. § 1114(1)(a). ..............................5

                  a)    The LOVESAC Trademarks are Protectable. ................................6

                  b)    Defendants' Use the LOVESAC Trademarks in Commerce ..........6

                  c)    Defendants' Use of the LOVESAC Trademarks is Likely to
                        Cause Confusion .........................................................................7

      D.    Lovesac Should be Awarded Maximum Statutory Damages for the
            Defendants' Willful Infringement of Lovesac's Registered Trademarks .............10

      E.    Lovesac Should Be Awarded Its Attorneys' Fees. ................................................16

      F.    Lovesac is Entitled to a Permanent Injunction Against Further
            Infringement .......................................................................................................17

            1.    Lovesac Has Suffered Irreparable Harm ...................................................17

            2.    Remedies at Law are Inadequate. .............................................................19

            3.    The Balance of Harms Tips Sharply in Lovesac's Favor ..........................19

            4.    Issuance of the Injunction is in the Public Interest ...................................20

III.  CONCLUSION ........................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Affliction Holdings, LLC v. Utah Vap or Smoke, LLC,*
    935 F.3d 1112 (10th Cir. 2019) ...............................................................................8

*Beer Nuts, Inc. v. Clover Club Foods Co.,*
    711 F.2d 934 (10th Cir. 1983) .................................................................................9

*Benton v. Cameco Corp.,*
    375 F.3d 1070 (10th Cir. 2004) ..............................................................................4

*Bishop v. Equinox Int'l Corp.,*
    154 F.3d 1220 (10th Cir.1998) .............................................................................17

*Bixler v. Foster,*
    596 F.3d 751 (10th Cir. 2010) ................................................................................4

*Burger King Corp. v. Majeed,*
    805 F. Supp. 994 (S.D. Fla. 1992) ........................................................................20

*Burger King v. Rudzewicz,*
    471 U.S. 462 (1985)................................................................................................4

*Chanel, Inc. v. Pu,*
    2009 WL 722050 (D. Kan. Mar. 18, 2009) ..........................................................10

*Chubb INA Holdings Inc. v. Hole In Won LLC,*
    No. 19-cv-2514-JPO, 2020 WL 774130 (S.D.N.Y. Feb. 18, 2020) ......................15

*Cyclonaire Corp. v. U.S. Sys., Inc.,*
    29 U.S.P.Q. 310, 1980 WL 30257 (D. Kan. May 9, 1980)....................................18

*Delta Western Group, L.L.C. v. Ruth U. Fertel, Inc.,*
    2000 WL 33710852 (D. Utah, Sept. 28, 2000)......................................................20

*Dunkin' Donuts v. Kashin Enterprises, Inc.,*
    119 F. Supp. 2d 1363 (N.D. Ga. 2000) .................................................................19

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)..............................................................................................17

*Eli Lilly & Co. v. Natural Answers, Inc.,*
    233 F.3d 456 (7th Cir. 2000) ................................................................................20

*Ferrero v. Assoc. Materials Inc.*,
  923 F.2d 1441 (11th Cir. 1991) ................................................................17

*Gen. Motors Corp. v. Urban Gorilla, LLC*,
  500 F.3d 1222 (10th Cir. 2007) ...............................................................19

*Herzfeld v. Parker*,
  100 F.R.D. 770 (D. Colo. 1984) ...............................................................10

*ICON Health & Fitness, Inc. v. Med. Prods.*,
  No. 1:10-CV-00207-DN, 2012 WL 3962737 (D. Utah Sept. 11, 2012)...................................6

*Illinois v. Hemi Group LLC*,
  622 F.3d 754 (7th Cir. 2010) .....................................................................5

*Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*,
  303 F.3d 1242 (11th Cir. 2002) ...............................................................18

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*,
  540 F.2d 266 (7th Cir. 1976) ...................................................................20

*Keith v. Koerner*,
  No. 11-cv-2281, 2016 WL 4541447 (D. Kan. Aug. 30, 2016).............................................3, 4

*Klein-Becker USA, LLC v. Englert*,
  No. 2:06-CV-378, 2011 WL 147893 (D. Utah Jan. 18, 2011), *aff'd*, 711 F.3d
  1153 (10th Cir. 2013)................................................................................12

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
  866 F. Supp. 585 (D.D.C. 1994) ...............................................................19

*Limitless Worldwide, LLC v. AdvoCare Intern., LP*,
  926 F.Supp.2d 1248 (D. Utah Feb. 25, 2013)...............................................18

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
  211 F.Supp.2d 567 (S.D.N.Y. 2002)...........................................................15

*Marcus Food Co. v. DiPanfilo*,
  671 F.3d 1159 (10th Cir. 2011) ...............................................................10

*Morris v. Khadr*,
  415 F. Supp. 2d 1323 (D. Utah 2006).........................................................4

*Oakley, Inc. v. Ly, LLC*,
  No. 20-cv-1414-WJM-MEH, 2021 WL 3206320 (D. Colo. July 29, 2021)...........................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)................................................................................16

*Optician Ass'n of America v. Independent Optician of Am.*,
    920 F.2d 187 (3d Cir. 1990)............................................................20

*Philip Morris USA Inc. v. Castworld Products, Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) ....................................................15

*Philip Morris USA Inc. v. Liu*,
    489 F.Supp.2d 1119 (C.D. Cal. 2007) .............................................15

*Polaroid Corp. v. Polarad Electronics Corp.*,
    287 F.2d 492 (2d Cir. 1961)..............................................................7

*Polo Fashions, Inc. v. Craftex, Inc.*,
    816 F.2d 145 (4th Cir.1987) ..............................................................7

*Promatek Industries, Ltd. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ...........................................................19

*Re/Max N. Cent., Inc. v. Cook*,
    272 F.3d 424, 432 (7th Cir. 2001) ...................................................18

*Rolex Watch U.S.A., Inc. v. Brown*,
    2002 WL 1226863, No. 01-cv-9155-JGK-AJP (S.D.N.Y. June 5, 2002) ..............................15

*Rovio Entm't, Ltd. v. Allstar Vending, Inc.*,
    97 F.Supp.3d 536 (S.D.N.Y. 2015) .................................................15

*Sally Beauty Co. v. Beautyco, Inc.*,
    304 F.3d 964 (10th Cir. 2002) .......................................................8, 9

*Sara Lee Corp. v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999)................................................12

*Sream, Inc. v. Raj*,
    No. 2:18-cv-02534-TLN-CKD, 2019 WL 3716540 (E.D. Cal. Aug. 7, 2019)......................19

*Stampin' Up!, Inc. v. Hurst*,
    Case No. 2:16-cv-00886-CW, 2018 WL 2018066 (D. Utah May. 1, 2018)...........................10

*Sys. Designs, Inc. v. New Customware Co.*,
    248 F. Supp. 2d 1093 (D. Utah 2003)................................................5

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
    41 U.S.P.Q.2d 1412 (S.D.N.Y.1996)..................................................7

*Tripodi v. Welch*,
    810 F.3d 761 (10th Cir. 2016) ...........................................................4

*UL LLC v. Am. Energy Prods., LLC*,
   358 F.Supp.3d 753 (N.D. Ill. 2019) ............................................................15

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   205 F.3d 1929 (10th Cir. 2000) ...................................................................16

*Universal Money Centers, Inc. v. American Tel. & Tel. Co.*,
   22 F.3d 1527 (10th Cir. 1994) .......................................................................8

*Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*,
   527 F.3d 1045 (10th Cir. 2008) .....................................................................6

*Vail Assocs., Inc. v. Vend–Tel–Co., Ltd.*,
   516 F.3d 853 (10th Cir. 2008) .......................................................................7

*Vuitton v. White*,
   945 F.2d 569 (3rd Cir. 1991) .......................................................................18

*Water Pik, Inc. v. Med-Sys., Inc.*,
   726 F.3d 1136 (10th Cir. 2013) .....................................................................7

*Zing Bros., LLC v. Bevstar, LLC*,
   Civil No. 2:11-cv-00337-DN, 2011 WL 4901321 (D. Utah Oct. 14, 2011)............................5

**Statutes**

15 U.S.C. § 1114(1) ................................................................................5

15 U.S.C. § 1114(1)(a) ............................................................................5

15 U.S.C. § 1115(a) ...............................................................................6

15 U.S.C. § 1116(d)(1)(B)(i) .....................................................................10

15 U.S.C. § 1117(a) ...........................................................................16, 17

15 U.S.C. § 1117(c) ...........................................................................10, 12

15 U.S.C. § 1117(c)(2) ...........................................................................16

15 U.S.C. § 1121 ..................................................................................4

15 U.S.C. § 1127 ..................................................................................6

28 U.S.C. § 1338(a) ...............................................................................4

28 U.S.C. § 1391(c)(3) ............................................................................5

Lanham Act.................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 55(b)(2)....................................................................................................4

Fed. R. Civ. P. 55(b)(2)(B) .............................................................................................10

## MOTION

Plaintiff The Lovesac Company ("Lovesac") moves for default judgment against Defendants www.Lovessacs.com, www.Lovesac.shop, and www.Lovesacshop.com ("Defendants".)  Defendants have failed to appear or defend and default has been entered. Accordingly, the Court may now enter default judgment.  Lovesac's motion is based on the Verified Complaint, the supporting Memorandum, and the Declarations of Brian Platt, filed concurrently with this motion.

## MEMORANDUM

## I.    BACKGROUND

Lovesac launched in 1995 when its founder Shawn Nelson built an eight-foot-wide foam-filled "Lovesac" in the basement of his parents' Utah home.  Shawn turned his passion for frameless furniture into the successful company known as Lovesac.  (Verified Complaint ("V.Compl.") ¶10.)  Lovesac first obtained its LOVESAC trademarks in 2002.  (*See* V.Compl. Ex. E.)  Since that time, Lovesac has continued to build on its success.  (*Id.* ¶12.)  In 2018, Lovesac joined the Nasdaq traded under the symbol LOVE; it continues to be a successful publicly traded company.  (*Id.*). The LOVESAC trademarks are fundamental to Lovesac's corporate identity, and its customers associate the LOVESAC trademarks with Lovesac's products and corporate identity.  (*Id.*)

The Defendants are counterfeiters that knowingly misappropriated the LOVESAC trademarks to sell counterfeit products and defraud potential Lovesac customers.  The following examples from Defendants' Counterfeit Website prominently features Lovesac's trademarks and logo:

1



www.lovesacshop.com (captured January 27, 2022)
(V.Compl. ¶14, Exs. A-C.; *and compare* Ex. D (www.Lovesac.com).)

The Defendants feature the LOVESAC trademarks in internet advertisements, in their domain names, including www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com, and in numerous other locations on their websites. The Defendants operate these sites, which purport to sell genuine Lovesac products to unsuspecting consumers. (*Id.* ¶¶15-19.) The Counterfeit sites feature photographs of Lovesac retail establishments, Lovesac products, and represent that the websites are affiliated with Lovesac. (*Id.* ¶¶16-18.) As outlined in the Verified Complaint, the Defendants' activities are fraudulent and are not affiliated with (or authorized by) Lovesac. (*Id.* ¶19.) For example, the following photo of a genuine Lovesac retail establishment appeared on the counterfeit website located at www.lovesacshop.com:

2



www.lovesacshop.com (captured January 27, 2022)
(*See also* V.Compl. ¶17, Exs. A-C.; *and compare* Ex. D (www.Lovesac.com).)

The Defendants' scheme to deceive potential customers is like the "Whack-a-Mole" carnival game.  In order to avoid detection, Defendants launch a counterfeit website, then when that site is taken down or they believe a takedown may be imminent, they launch another counterfeit site in its place.  For example, the Defendants' first Counterfeit Website was www.lovessacs.com.  When that site was disabled, an identical site appeared at www.lovesac.shop; and when that website was disabled, a third counterfeit site appeared at www.lovesacshop.com.  (*Id.* ¶25.)  The Defendants' fraud has been persistent; and it has been stopped by the preliminary injunction entered by this Court.

## II.    ARGUMENT

The Federal Rules provide a two-step process for obtaining a default judgment.  *Keith v. Koerner*, No. 11-cv-2281, 2016 WL 4541447, at *2 (D. Kan. Aug. 30, 2016).  First, the Clerk

enters default against the defendant for failing to plead or otherwise defend. *Id.* The entry of default means that the defendant is deemed to have admitted the well-pleaded facts in the complaint. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). Thereafter, the Plaintiff must apply for default judgment. Where a Plaintiff seeks default judgment for something other than a sum certain, it must apply to the Court pursuant to Fed. R. Civ. P. 55(b)(2). *Keith*, 2016 WL 4541447, at *2; *see also* DUCivR 55-1(b)(2). The Court must then consider whether there is sufficient basis for the requested judgment. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). In addition, the Court must assess "subject matter jurisdiction and personal jurisdiction before granting default judgment." *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1330 (D. Utah 2006).

### A.    The Court has Subject Matter Jurisdiction Over this Action

The claims of the Verified Complaint are trademark infringement claims under the Lanham Act; the Lanham Act vests subject matter jurisdiction in this Court. 15 U.S.C. § 1121 (action arising under the Lanham Act); *see also* 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks.) Thus, the Court has subject matter jurisdiction over the claims brought in Lovesac's Verified Complaint.

### B.    The Court has Personal Jurisdiction over the Defendants.

The Court has personal jurisdiction over the Defendants because (1) the defendants purposefully directed their activities at residents of this jurisdiction and (2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *E.g. Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The Defendants target Lovesac's well-known and federally registered trademarks in the District of Utah, misappropriating Lovesac's trademarks to sell their counterfeit goods. (*See* V.Compl. ¶¶14-21; *see also* V.Compl. Exs. A-C.) In addition, the Defendants target Utahns with their counterfeit products and offer to sell and ship products to Utah. (*See id.* ¶23.) Utah courts have

exercised personal jurisdiction over foreign websites using registered intellectual property rights without authorization and causing an impact in Utah.  *E.g., Zing Bros., LLC v. Bevstar, LLC*, Civil No. 2:11-cv-00337-DN, 2011 WL 4901321, at *3-4 (D. Utah Oct. 14, 2011) (concluding that "personal jurisdiction is proper for a highly commercial site even when there is only minimal or no evidence of actual sales into the forum.") (internal quotations omitted); *accord Sys. Designs, Inc. v. New Customware Co.*, 248 F. Supp. 2d 1093, 1096 (D. Utah 2003) (trademark infringement impacting Utah sufficient to justify an exercise of personal jurisdiction). Moreover, the sale of counterfeit merchandise into Utah is a tortious act directed at Utah—to the peril of Utah residents—and sufficient to support the exercise of personal jurisdiction.  *E.g., Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling products to Illinois residents).

Defendants use Lovesac's trademarks to sell counterfeit goods to Utahns: this is more than sufficient to establish personal jurisdiction over Defendants.[1]

### C.   Default Judgment Should be Granted.

#### 1.   Defendants' Use of the LOVESAC Trademarks is Trademark Infringement in Violation of 15 U.S.C. § 1114(1)(a).

Count I asserts Trademark Infringement in violation of the Lanham Act.  A defendant is liable for trademark infringement if "without the consent of the registrant, [it] uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[] is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).  A Plaintiff may establish a

---

[1] The Defendants are foreign entities apparently based in China and Russia.  Because the exercise of personal jurisdiction over the Defendants is proper in Utah, venue is also proper in Utah.  *See* 28 U.S.C. § 1391(c)(3).

*prima facie* claim of infringement by demonstrating (1) protectability; (2) defendants' use of the mark in commerce; and (3) that the infringing use of the mark is likely to cause confusion, mistake, or deceive consumers as to the origin or sponsorship of Defendant's products. *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*, 527 F.3d 1045, 1049 (10th Cir. 2008).

### a)    The LOVESAC Trademarks are Protectable.

The Lanham Act creates a statutory presumption of protectability for registered marks. *ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-CV-00207-DN, 2012 WL 3962737, at *3 (D. Utah Sept. 11, 2012) (*citing* 15 U.S.C. § 1115(a) ("Any registration. . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark ...")); *Utah Lighthouse*, 527 F.3d at 1050.  Lovesac owns the federally-registered LOVESAC trademarks and thus is entitled to a statutory presumption of protectability.  (*See* V.Compl. Ex. E.)

### b)    Defendants' Use the LOVESAC Trademarks in Commerce

Defendants' use of the LOVESAC trademarks in internet advertising and e-commerce is a use in commerce.  *E.g.*, 15 U.S.C. § 1127 (defining "commerce" as "all commerce which may lawfully be regulated by Congress."); (*see also* V.Compl. ¶¶14, 16).  Defendants use the LOVESAC trademarks in their domain names, including www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com, as well as numerous other locations on their websites.  These are uses in commerce.  *See* 15 U.S.C. § 1127.  The Defendants' use of the LOVESAC trademarks in internet advertising, on commercial websites, and on counterfeit products available for sale on the internet, constitutes use in commerce.

c)    **Defendants' Use of the LOVESAC Trademarks is Likely to Cause Confusion**

For counterfeit uses, some courts do not undertake the factor-by-factor analysis first identified in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); this is because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Tenth Circuit considers six non-exhaustive factors to evaluate likelihood of confusion: (1) evidence of actual confusion; (2) the strength of the contesting mark; (3) the degree of similarity between the competing marks; (4) the intent of the alleged infringer in adopting the contested mark; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the similarity of the parties' products and the manner in which they market them. *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013); *Vail Assocs., Inc. v. Vend–Tel–Co., Ltd.*, 516 F.3d 853, 863 (10th Cir. 2008).

> The importance of any particular factor in a specific case can depend on a variety of circumstances, including the force of another factor. For example, if the two marks are not at all similar, the degree of consumer care is unlikely to make a difference. As we have said, these six factors are interrelated and no one factor is dispositive. **At all times the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks.**

*Water Pik,*, 726 F.3d at 1143 (internal quotations and citations omitted, emphasis added).

The first factor—*actual confusion*—". . . is often considered the best evidence of likelihood of confusion," *Universal Money Centers, Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994). In this case, Lovesac learned of the Counterfeit Websites because potential customers were confused as to the origin of the sites. (*See* V.Compl. ¶15.) Such evidence of actual confusion weighs strongly in favor of Lovesac. Moreover, the Defendants' Counterfeit Websites plainly demonstrate their use of counterfeit marks identical to LOVESAC trademarks on counterfeit products. (V.Compl. Exs. A-C.) This factor strongly favors Lovesac.

The second factor—*strength of the mark*—considers the strength of the asserted LOVESAC trademarks. In this case, the LOVESAC trademarks are the corporate identity of a popular, publicly-traded furniture company. In the first three quarters of 2021, Lovesac enjoyed $302M in sales and spent $39M in advertising and marketing. (V.Compl. ¶12.) This advertising promotes the LOVESAC trademarks on genuine products. By any measure, the LOVESAC trademarks are strong. Strength of the marks is important because "[t]he stronger the mark, the greater the likelihood that encroachment on the mark will produce confusion." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002). This factor strongly favors Lovesac.

The third factor—*degree of similarity*—also strongly favors Lovesac. "*[D]egree of similarity is the most important factor*," and is based on presentation, the "item on which the marks were placed, and the meaning of the marks." *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019). Here, the counterfeiting Defendants use marks ***identical*** to Lovesac's trademarks, which are placed on counterfeit goods, for the purpose of deceiving consumers. (V.Compl. ¶¶14-17.) This factor strongly favors Lovesac.

The fourth factor—*intent of the alleged infringer*—also strongly favors Lovesac, because Defendants' willful and nefarious intent is apparent. Defendants copied Lovesac's trademarks in

order to impersonate Lovesac online.  "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justif[ies] an inference of likelihood of confusion."  *Sally Beauty*, 304 F.3d at 973.  Thus, this factor strongly favors Lovesac.

The fifth factor—*degree of care exercised by consumers*—also favors Lovesac.  The Defendants' counterfeit products are discounted ***by 95%*** when compared to prices for comparable authentic Lovesac products.  An authentic Lovesac BigOne product sells for $1,650.  (*See* V.Compl. Ex. G.)  The Defendants' highly-discounted counterfeit sells for $89.  (*Id.* Ex. F.)  Consumers are less likely to exercise care and are more likely to be confused with inexpensive products.  *E.g.*, *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983).  Consumers are also more likely to be confused when they believe they are getting a limited-time offer, and the counterfeiters advertised "Limited sale for this event" and "only 400 sets."  (*See* V.Compl. Exs. A-C.)  Given the use of the Lovesac trademarks and the "copycat" nature of the Defendants' Counterfeit Websites, even a careful consumer would be deceived by the Defendants' Counterfeit Websites.  This factor favors Lovesac.

The final factor— *the similarity of the parties' products and the manner in which they market them*—also favors Lovesac.  Defendants' images, graphics, and marketing materials have been stolen directly from Lovesac's own website and advertising.  (*Id.*)  Defendants' scheme purports to sell authentic Lovesac products at steeply discounted prices; but instead they offer counterfeit goods, sold with counterfeit marks, at discounted prices.  This factor strongly favors Lovesac.

Each of the likelihood of confusion factors supports Lovesac, and the Court should conclude that Lovesac has proven its claim for damages based on its claims for trademark infringement.

**D.    Lovesac Should be Awarded Maximum Statutory Damages for the Defendants' Willful Infringement of Lovesac's Registered Trademarks**

"Default judgment . . . cannot be entered until the amount of damages has been ascertained." *Stampin' Up!, Inc. v. Hurst*, Case No. 2:16-cv-00886-CW, 2018 WL 2018066 at *6-7 (D. Utah May. 1, 2018) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)). This ensures plaintiff receives damages "supported by actual proof." *See id*. "The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, a hearing is not required where damages "are capable of mathematical calculation." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (affirming default judgment without a hearing where the damages were capable of mathematical calculation).

Lovesac seeks recovery of statutory damages for willful trademark infringement. When the infringement is willful, statutory damages are determined "per counterfeit mark per type of goods or services."[2] 15 U.S.C. § 1117(c). For purposes of calculating statutory damages, each of the three websites willfully infringes at least one of the registered LOVESAC trademarks by offering for sale at least three types of goods (*i.e.*, furniture, bags, and bedding) with the counterfeit mark. *Oakley, Inc. v. Ly, LLC*, No. 20-cv-1414-WJM-MEH, 2021 WL 3206320, at *3 (D. Colo. July 29, 2021) (illustrating what constitutes separate types of goods by identifying handbags, wallets, key chains and eyeglass frames as four types of goods) (citing *Chanel, Inc. v. Pu*, 2009 WL 722050, at *9-10 (D. Kan. Mar. 18, 2009)). Lovesac has registered the LOVESAC

---

[2] The Lanham Act defines a "counterfeit mark" as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i).

trademarks for furniture (Reg. No. 2659121), bedding (Reg. No. 3244136), and bags (Reg. No. 4801804). (V.Compl. ¶11 and Ex. E.)   On their respective websites, the defendants use the LOVESAC trademarks in offers for sale of furniture (e.g., the BigOne and SuperSac products), bedding (e.g., the FootSac product), and bags (e.g., the BigOne Duffle Bag product), each of which bears the LOVESAC trademarks.   The content of the counterfeit websites derives almost exclusively from the genuine Lovesac website.   (*See Id*. Exs. A-C.)   Additionally, Defendants use the LOVESAC trademarks in their domain names, www.lovessacs.com, www.lovesac.shop, and www.lovesacshop.com, as well as numerous other locations on their websites. (*Id*. ¶¶14-21.) The Defendants' websites prominently feature the Lovesac logo and Lovesac products, including photographs of actual Lovesac retail establishments and photographs copied from the genuine Lovesac website, as illustrated below:



www.lovesacshop.com (captured January 27, 2022)

(V.Compl. ¶¶15-16 and Ex. B)

The Lanham Act allows a plaintiff to elect an award of statutory damages in cases "involving the use of a counterfeit mark." 15 U.S.C. § 1117(c). "Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain," and can be particularly appropriate when a defendant has defaulted in a trademark infringement action. *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165–166 (S.D.N.Y. 1999).

Statutory damages may range from $1,000 to $200,000 per counterfeit mark per type of goods and services, to a maximum of $2,000,000 per counterfeit mark per type of goods or services when the infringement is willful. 15 U.S.C. § 1117(c). The Court enjoys broad discretion to award statutory damages "as the court considers just." *Id.* at 166. Factors often considered in an award of statutory damages include:

> (1) the [defendant's] expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [mark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Klein-Becker USA, LLC v. Englert*, No. 2:06-CV-378, 2011 WL 147893, at *14 (D. Utah Jan. 18, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013). Each of these factors supports an award of the maximum statutory damages of $2,000,000 for the Defendants' three infringing websites.

The first factor—*expenses saved and the profits reaped*—weighs strongly in favor of a maximum award. In this case, the counterfeiting Defendants had virtually no expenses because all of their advertising and product materials were stolen from Lovesac. Lovesac invests millions of dollars in advertising annually, including a whopping ***$39M*** on advertising in the first three quarters of 2021. (V.Compl. ¶12). Defendants spent nothing to acquire these advertising assets; by copying Lovesac's genuine website, products, photographs, and related content,

12

Defendants saved millions of dollars in product development expense. *(See id.)* And by the same token, the Defendants profits were entirely ill-gotten. Moreover, based on the 49 separate transaction logs provided by PayPal, the Defendants collected at least REDACTED-AEC in ill-gotten "profits" from their fraud, which harmed not only Lovesac but at least REDACTED customers. (Platt Decl. ¶3.)[3] If we consider that the Defendants' products were marketed at a 95-percent discount, this represents approximately REDACTED-AEC in lost revenues to Lovesac. This factor also supports a maximum award of statutory damages.

The second factor—*revenues lost by the plaintiff*—also supports a maximum award. The Paypal accounts associated with the counterfeit websites included tens of thousands of dollars in ill-gotten funds (not including funds disbursed to the counterfeiters prior to the seizure) and the Defendants "sold" their counterfeit products at a 95% discount. The revenues lost by Lovesac are substantial—approximately REDACTED-AEC—not to mention its lost goodwill. (*See* V.Compl. Exs. A, B, C (the "Counterfeit Websites"); *see also* Platt Decl. ¶3.) In addition, Lovesac spent $39M on advertising in three-quarters of 2021 alone, and the Defendants' counterfeiting caused immeasurable damage to its brand, both in terms of lost potential customers and lost goodwill. Lovesac's products have a hard-earned reputation for quality, and its entire existence is threatened by prolific counterfeiters like the Defendants. Lovesac estimates that it loses thousands of dollars in sales each day due to counterfeiters like the Defendants; its entire business—in which it has invested millions of dollars—is threatened by counterfeiters like the Defendants. This factor supports a maximum award of statutory damages.

The third factor—*value of the trademarks*—also supports a maximum award of statutory damages. As demonstrated above, Lovesac has invested millions in advertising and in

---

[3] The Defendants apparently do not deliver any product to any customers. It appears their product offerings were fraudulent and no products were ever delivered. (Platt Decl. ¶4.)

developing its reputation and goodwill. (V.Compl. ¶12.) Due to these investments, by 2017, Lovesac had grown to operate nearly 70 company-owned retail showrooms nationwide and was named, for a second time, as America's fastest growing furniture company, according to Furniture Today magazine. (*Id.* ¶12.) This factor supports a maximum award of statutory damages. The value of LOVESAC trademarks is illustrated by Lovesac's acquisition of at least twelve federal trademark registrations in relation to its marks. (*Id.* ¶11.)

The fourth factor—*the deterrent effect on others besides the defendant*—supports a maximum award of statutory damages. A harsh deterrent is warranted; in fact, only a harsh deterrent is likely to have the desired impact. The Defendants—counterfeiters based in China and Russia—provide a blueprint for quick and easy gains, repeatedly replicating their counterfeit sites when their previous counterfeit websites were disabled. (*Id.*, ¶¶6, 25.) A strong deterrent is warranted to discourage others from following the same path. In short, to show that crime doesn't pay. A maximum award of statutory damages sends a message that counterfeiting is unacceptable and has consequences. This factor supports a maximum statutory award.

The fifth factor—*whether the conduct was innocent or willful*—also supports a maximum award. Defendants' conduct was unquestionably willful: the Defendants did not "accidentally" create 66 nearly-identical infringing product listings, or "accidentally" copy Lovesac's photographs, products, "Terms and Conditions," or "Privacy Policy." This factor supports a maximum award of statutory damages. (*See* V.Compl. ¶¶12-21.)

The sixth factor—*whether the Defendant has cooperated in providing particular records from which to assess the value of the infringing material produced*—also weighs in favor of a maximum award of statutory damages. The Defendants, despite knowing of this litigation, have chosen not to appear or respond to this litigation. The Defendants have provided no information,

14

and the true scope of their counterfeiting activities will likely never be known.  Accordingly, this factor also supports a maximum award of statutory damages.

The final factor—*the potential for discouraging the Defendants*—also weighs in favor of an award of maximum statutory damages.   The Defendants repeatedly put up new counterfeit websites to avoid detection and to continue their counterfeiting.  (Id. ¶25.)  A maximum award of statutory damages has the potential to impress upon the Defendants that trademark infringement has serious consequences.  This factor supports a maximum award of statutory damages.

In cases involving willful acts of counterfeiting courts frequently award substantial statutory damages.  *Chubb INA Holdings Inc. v. Hole In Won LLC*, No. 19-cv-2514-JPO, 2020 WL 774130 (S.D.N.Y. Feb. 18, 2020) ($1,000,000 in statutory damages for counterfeit use of CHUBB); *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) ($2,000,000 in statutory damages for two counterfeit Marlboro trademarks); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1122 (C.D. Cal. 2007) ($2,000,000 for counterfeit Marlboro cigarettes); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 584 (S.D.N.Y. 2002) ($1,000,000 in statutory damages for six counterfeit Louis Vuitton marks); *Rolex Watch U.S.A., Inc. v. Brown*, 2002 WL 1226863, No. 01-cv-9155-JGK-AJP, at *8-9 (S.D.N.Y. June 5, 2002) ($1,000,000 in statutory damages for sale of 10,000 counterfeit watches); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F.Supp.3d 536, 546 (S.D.N.Y. 2015) ($1,500,000 award of statutory damages for the sale of goods featuring "15 trademarked Angry Birds images"); *UL LLC v. Am. Energy Prods., LLC*, 358 F.Supp.3d 753 (N.D. Ill. 2019) ($500,000 award of statutory damages for counterfeit UL certification marks).  In view of the foregoing, Lovesac suggests the Court enter an award of statutory damages against each Defendant for the maximum amount of "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale,

or distributed" for a total of $6,000,000.  15 U.S.C. § 1117(c)(2).[4]

     **E.**    **Lovesac Should Be Awarded Its Attorneys' Fees.**

The Lanham Act gives the trial court discretion to award reasonable attorney fees to the prevailing party in "exceptional" cases.  15 U.S.C. § 1117(a).  The district court "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).   In considering whether to award attorneys' fees in an exceptional case, the court may consider: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 n.6.  In this case, the Court should conclude that an award of attorneys' fees and costs is appropriate under the Lanham Act.

An "exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 572 U.S. at 554 (internal quotations omitted).  "'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'"  *Id.*

Here, such an award is within the Court's sound discretion in view of Defendants' fraudulent, deliberate, and willful infringement of the LOVESAC trademarks.  *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1929, 1232 (10th Cir. 2000) (determining

---

[4] Although justified, Lovesac does not request a statutory damages award of $2,000,000 for each of the registered classes of goods (i.e., furniture (Reg. No. 2659121), bedding (Reg. No. 3244136), and bags (Reg. No. 4801804).  Such an award would total $18,000,000 (i.e., $2M * 3 Defendants * 3 classes of goods).  Lovesac suggests $2,000,000 against each Defendant is sufficient to provide a deterrent effect.

16

that an "exception case" meriting an award of attorney fees under 15 U.S.C. § 1117(a) "occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful"); *see also Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1224 (10th Cir.1998).  Lovesac has prevailed, and the facts are exceptional.  The blatant copying of Lovesac's trademarks and websites served the Defendants' counterfeiting purposes and caused harm to Lovesac's reputation and goodwill.  The actions by the Defendants are indefensible and hurt both Lovesac and its customers.  Considering the totality of the circumstances, this is an exceptional case such that an award of attorney fees is appropriate to deter Defendants from engaging in such willful conduct in the future.

Plaintiff requests an award of its attorneys' fees and costs in the amount of $29,277.00. *See* Fee Declaration of Brian Platt ("Fee Decl.") filed concurrently herewith.

### F.    Lovesac is Entitled to a Permanent Injunction Against Further Infringement

Lovesac requests a permanent injunction against further acts of infringement of the Lovesac trademarks by the Defendants.  Such an injunction is necessary in light of Defendants' wanton infringement, failure to respond to the complaint in this action, and Lovesac's interest in protecting its valuable intellectual property rights.  A party seeking a permanent injunction must demonstrate "(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 1.    Lovesac Has Suffered Irreparable Harm

An injury is irreparable "if it cannot be undone through monetary remedies."  *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).  The loss of customers and

goodwill is an "irreparable injury." *E.g.*, *Limitless Worldwide, LLC v. AdvoCare Intern., LP*, 926 F.Supp.2d 1248, 1254 (D. Utah Feb. 25, 2013); *see also* *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.")  Far beyond the damages suffered by Lovesac, the Defendants' misappropriation of its trademarks has caused irreparable injury to Lovesac's goodwill and reputation.  Substantial evidence in the Verified Complaint and supporting declarations demonstrates a loss of customers and market share and harm to Lovesac's reputation resulting from these counterfeiting activities.  Lovesac has invested substantial time and money to create and advertise its products, and trademark infringement irreparably harms Lovesac's goodwill and reputation.

Lovesac has shown irreparable harm resulting from the infringing conduct.  "When a high probability of confusion exists, 'injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows.'"  *E.g.* *Cyclonaire Corp. v. U.S. Sys., Inc.*, 29 U.S.P.Q. 310, 1980 WL 30257, at *8 (D. Kan. May 9, 1980).

> Injuries to reputation and goodwill, that would logically result from trademark infringement, ***would not be readily compensable with money damages and constitute irreparable injury***. Plaintiff is entitled to have its reputation within its control.

*Id.*(finding that likelihood of confusion supported inference of irreparable injury); *see also* *Re/Max N. Cent.*, 272 F.3d at 432 ("damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.").

When considering counterfeits, Courts are likely to find irreparable harm.  *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248 (11th Cir. 2002) (affirming irreparable injury finding for counterfeit "FAIR & WHITE" products); *Vuitton v. White*, 945 F.2d 569, 576 (3rd Cir. 1991) (reversing lack of irreparable injury finding for

counterfeit luggage and handbags); *see also Sream, Inc. v. Raj*, No. 2:18-cv-02534-TLN-CKD, 2019 WL 3716540, at \*5 (E.D. Cal. Aug. 7, 2019), *report and recommendation adopted*, No. 2:18-cv-02534-TLN-CKD, 2019 WL 5091138 (E.D. Cal. Sept. 4, 2019) ("irreparable injury occurred as a result of defendant's unauthorized sale of counterfeit products"). Defendants' willful misappropriation of the LOVESAC trademarks irreparably harms Lovesac through diminished goodwill, damage to Lovesac's reputation, loss of market share, loss of exclusivity, and loss of future sales. *See, e.g., Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

## 2.   Remedies at Law are Inadequate.

The Defendants' infringement of the LOVESAC trademarks represents injuries where remedies available at law, e.g., money damages, are quintessentially insufficient. *E.g., Dunkin' Donuts v. Kashin Enterprises, Inc.*, 119 F. Supp. 2d 1363 (N.D. Ga. 2000) ("Because of the . . . court's finding that the defendant's actions will harm the plaintiff's national reputation, goodwill, and business, the court holds that there is no adequate remedy at law, if the permanent injunction is not issued.") The lack of such remedies is compounded where the Defendants operate from a foreign country and refuse to submit to the jurisdiction of this Court. This factor supports the issuance of an injunction.

## 3.   The Balance of Harms Tips Sharply in Lovesac's Favor

Willfully infringing defendants are entitled to little equitable consideration: "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). "[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." *Gen.*

*Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007). "One who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). The Defendants willfully infringed Lovesac's trademarks to sell counterfeit products; the harm to Lovesac is immense, and its reputable business suffers. As such, the balance of harms tips sharply in Lovesac's favor.

### 4.    Issuance of the Injunction is in the Public Interest

Protecting the rights of the owner of protected trademarks is consistent with the public interest because trademarks foster competition and promote the maintenance of quality in business. *Delta Western Group, L.L.C. v. Ruth U. Fertel, Inc.*, 2000 WL 33710852, *3 (D. Utah, Sept. 28, 2000). Moreover, the public has an interest in "the right not to be deceived or confused." *Optician Ass'n of America v. Independent Optician of Am.*, 920 F.2d 187, 197 (3d Cir. 1990). Here, the public is given a false impression that Defendants operate a genuine website with Lovesac's approval and endorsement. An injunction thus serves the public interest "because enforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000), and protects "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

The injury to the public is significant, and the injunctive relief Lovesac seeks will remedy that injury by dispelling the confusion created by Defendants' actions. The public holds a right not to be confused and defrauded as to the source of the goods offered by Defendants.

## III.    CONCLUSION

For the reasons set forth in this Motion for Default Judgment, Lovesac respectfully requests the Court grant its motion for default judgment in the amount of $2,000,000 against

each of the Defendants www.lovessacs.com; www.lovesac.shop; and www.lovesacshop.com for a total damages award of $6,000,000. In addition, Lovesac requests an award of attorneys' fees and costs of $29,277.00 jointly and severally against all of the Defendants. Lastly, Lovesac requests a permanent injunction against all of the Defendants, enjoining further infringement of Lovesac's trademarks.

DATED this 28th day of April, 2022.

Respectfully submitted,

By: /s/ Brian N. Platt

Brent Lorimer
Brian N. Platt

*Attorneys for The Lovesac Company*